UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS. CASE NO: 2:14-cr-18-FtM-29DNF

JOHN J. HANLON, JR.

---

**OPINION AND ORDER**

This matter came before the Court on January 5, 2015 for a sentencing hearing. The Court imposed sentence, but took the issue of victim restitution under advisement pending a restitution hearing. The Court conducted the restitution hearing on January 20, 2015. The United States relied upon information in the Presentence Report, information submitted by counsel for the victims to the Probation Office, and information attached to the Government's Restitution Memorandum (Doc. #56), without calling any witnesses. Defendant objected to the process and the amount of restitution sought by the government, and asserted that no restitution should be imposed.

**I.**

A federal district court has no inherent power to require a criminal defendant to pay restitution, and may do so only as explicitly empowered by statute. United States v. Dickerson, 370 F.3d 1330, 1335 (11th Cir. 2004). The relevant statute in this case is 18 U.S.C. § 2259. Paroline v. United States, 134 S. Ct.

1710, 1716 (2014). Title 18 U.S.C. § 2259(a) provides that a district court "shall order restitution for any offense under" Chapter 110 of Title 18. 18 U.S.C. § 2259(a). Chapter 110 covers a number of offenses, including the possession and distribution of child pornography. 18 U.S.C. § 2252.

The Court is required to issue a restitution order, § 2259(b)(4)(A) ("[t]he issuance of a restitution order under this section is mandatory"), which directs defendant "to pay the victim . . . the full amount of the victim's losses as determined by the court," § 2259(b)(1). A "victim" is an "individual harmed as a result of a commission of a crime under this chapter," 18 U.S.C. § 2259(c). "[A] crime" under this statute "refers to the offense of conviction." Paroline, 134 S. Ct. at 1720. "So if the defendant's offense conduct did not cause harm to an individual, that individual is by definition not a 'victim' entitled to restitution under § 2259 . . . [The statute] is intended to compensate victims for losses caused by the offense of conviction." Paroline, 134 S. Ct. at 1720. The "full amount of the victim's losses" includes any costs incurred by the victim for "(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as

a proximate result of the offense." 18 U.S.C. § 2259(b)(3)(A)-(F).

A defendant is liable, however, only for the amount of restitution which compensates a victim for the costs proximately caused by his offense conduct. Paroline, 134 S. Ct. at 1720-22; United States v. McDaniel, 631 F.3d 1204, 1208–09 (11th Cir. 2011). In Paroline, the Supreme Court explained that "where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant . . . a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." Id. at 1727. Paroline set out the following factors for the district courts to consider in determining the defendant's "relative role in the causal process": "the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any

connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role." Id. at 1728. The Supreme Court cautioned, however, that these factors should only serve the district court as "rough guideposts for determining an amount that fits the offense," id., and that the district courts must "do their best" to determine each defendant's respective liability, id. at 1715. "[T]he ultimate question is how much of these [general] losses were the 'proximate result' of that individual's offense." Paroline, 134 S. Ct. at 1722. In the Eleventh Circuit, "end-user defendants may proximately cause injuries to the victims of sexual child abuse; and . . . for proximate cause to exist, there must be a causal connection between the actions of the end-user and the harm suffered by the victim." United States v. McGarity, 669 F.3d 1218, 1269 (11th Cir. 2012).

The attorney for the government bears the burden of establishing both proximate causation and the amount of restitution. "An order of restitution under this section shall be issued and enforced in accordance with section 3664," 18 U.S.C. § 2259(b)(2), which in turn provides in relevant part that "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government," 18 U.S.C. § 3664(e). As with any restitution order, the government's burden of proof is by a preponderance of the

evidence. United States v. Baldwin, ____ F.3d ____ (11th Cir. 2014) (citing United States v. Futrell, 209 F.3d 1286, 1290 (11th Cir. 2000)).

**II**

The Court makes the following findings of fact and conclusions of law:

1. Defendant John J. Scanlon, Jr. pled guilty to and has been convicted of two offenses: (1) from on or about June 12, 2013, through on or about July 14, 2013, he knowingly distributed child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) (Count One); and (2) between the same dates, he knowingly possessed child pornography, in violation of 18 U.S.C. §2252(a)(4)(B) and (b)(1) (Count Two).

2. The two offenses of conviction are Chapter 110 offenses. Defendant is therefore subject to mandatory restitution pursuant to 18 U.S.C. § 2259.

3. The Presentence Report, to which there were no relevant objections, stated that an undercover Task Force agent accessed defendant's peer-to-peer network via the internet and determined that his "shared folder" had 100 files which were "child pornography notable." Between June 12, 2013, and June 27, 2013, the agent obtained 32 downloads from defendant's computer, consisting of 30 videos and two still images. The agent obtained additional partial downloads between July 5, 2013, and July 14,

2013. The agent contacted a Sheriff's Deputy in New Jersey who had previously investigated defendant, and was told that on March 1, 2013, defendant was sharing approximately 51 videos that were indicative of child pornography. On July 15, 2013, a federal search warrant was executed at defendant's residence. Subsequent forensic examination of defendant's computer found 832 videos of child pornography and multiple other explicit but non-child pornographic images. The Presentence Report stated that law enforcement had determined that the material possessed by defendant contained some images of known victims, and attached victim impact statements relating to the "Vicky Series" and the "Marineland Series."

4.  In this case, two persons have asserted they are victims and have made claims for restitution. "Vicky" seeks $50,000 in restitution plus $2,500 in attorney fees; "Sarah," the primary victim in the "Marineland Series," seeks $50,000 in restitution plus $1,500 in attorney fees.

5.  The government has shown by a preponderance of the evidence that defendant possessed and distributed one image of Vicky and possessed one image of Sarah. No further evidence regarding images of Vicky or Sarah in this case was presented by the government.

6.  The government has shown by a preponderance of the evidence that each victim has outstanding losses caused by the

continuing traffic in those images, and that it is impossible to trace a particular amount of those losses to the individual defendant.

7. The Court therefore must order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses.

**8. "Vicky Series":**

(a) Vicky is a victim of defendant's offenses of conviction in Count One and Count Two. The Government's Restitution Memorandum proffers that defendant distributed one image of Vicky (Doc. #56, p. 1), presumably to the undercover agent. No further facts relating to the Vicky Series images involved in this case have been presented.

(b) Through counsel's submission, Vicky has stated that she has incurred the following costs resulting from the publications of the offending images:

| **Description** | **Amounts** | **Amounts Incurred After June 13, 2010** |
|---|---|---|
| Psychological Counseling | $113,600.00 | $76,412.50 |
| Lost Income | $828,150.00 | $776,887.00 |
| Out-of-Pocket Costs and Expenses | $88,973.29 | $26,922.68 |
| Educational and Vocational Counseling and lost part time income during school | $53,330.00 | $27,182.00 |
| Total | $1,084,053.00 | $907,404.18 |

(c)  As of October 13, 2014, Vicky's counsel reported that they have received $643,324.99 in restitution payments, although this is not apportioned as to conduct occurring after June 13, 2010.

(d)  Defense counsel objects to the Court's reliance on the information submitted by Vicky's attorney, likening it to a grossly inflated demand letter in a civil action.  The Court finds the analogy inaccurate.  The information from Vicky's counsel was not a demand letter to an opposing counsel, but information known to be headed to the court for a restitution hearing.  The amounts are represented to be the costs actually incurred or to be incurred.  The Court finds that amounts to be sufficiently reliable to be considered at sentencing because the information bears at least a minimal indicia of reliability and defendant has neither alleged nor shown that the info is materially false.

(e)  The Vicky Series of images has unfortunately been very prolific.  The government reports that there have been convictions in 530 federal cases in which restitution orders have been entered for Vicky.  The amounts of restitution ordered vary wildly, ranging from $200.00 to $1,330,015.75.  The total restitution ordered for Vicky is $9,113,100.90; the average restitution per case is $17,194.53; and the median restitution is $2,881.50.  The government's chart indicates that no district court in the Middle District of Florida has ever ordered restitution in a Vicky Series

case.  The Eleventh Circuit has upheld restitution awards to Vicky.  E.g., United States v. Brannon, 476 F. App'x 386 (11th Cir. 2012) ($3,500); United States v. McDaniel, 631 F.3d at 1208 ($12,700.00).

(f)  It is reasonably predictable that the Vicky Series will continue to be a staple of the internet among those interested in child pornography.  Predicting the number of future convictions and/or restitution orders for crimes contributing to Vicky's general loses is virtually impossible, other to say that if past history is any indication the number will be fairly substantial.

(g)  The government has presented no evidence from which the Court can reliably estimate the broader number of offenders involved in possession or distribution of the Vicky Series images.

(h)  There is no evidence that defendant reproduced any of the Vicky Series images, but the government proffered that he distributed a single Vicky image.  The Court infers that this was to the undercover agent, who obviously did not re-distribute it or place it where it could be accessed by others.  The Vicky image was in defendant's shared files, and may well have been accessed by others, but there was no evidence presented by the government to support this hypothesis.

(i)  Defendant had no connection to the initial production of the Vicky Series images.

(j) The government proffered that defendant distributed one image of Vicky. There is no evidence that defendant possessed or distributed additional images of Vicky.

(k) Vicky had no knowledge of defendant nor his single distribution of her image until informed by her attorney of the pending case.

(l) The Court concludes that the government has not established by a preponderance of the evidence that defendant's possession and distribution of the single image of Vicki was the proximate cause of her harm. No witnesses testified, and the record is far less substantial than that found insufficient in McGarity, 669 F.3d at 1269-70. To paraphrase that case: "We do not seek to minimize the harm suffered by [Vicky]. However, [] 18 U.S.C. § 2259 was intended to compensate the victims of child pornography for harms caused by individual defendants and not to serve as strict liability against any defendant possessing such admittedly repugnant images or videos." Id. at 1270. The government's request for restitution as to Vicky is denied.

**9. "Marineland Series" (Sarah):**

(a) Sarah is a victim of defendant's offense of conviction as to at least one of the counts. The Government's Restitution Memorandum states that Sarah is a victim and is eligible for restitution, but makes no proffer of any facts to support those assertions. (Doc. #56, pp. 2-3.) The Court infers from the facts

set forth in the Presentence Report that Sarah was one of the victims identified by law enforcement. The government has not established any additional facts related to Sarah as to her relation to this case.

(b) Through counsel's submission, Sarah has stated that she has incurred the following costs resulting from the publications of the offending images:

| Description | Total Amount | Amount Incurred After June 13, 2010 |
|---|---|---|
| Psychological Counseling | $448,552.00 | $448,552.00 |
| Lost Income | $2,273,436.00 | $2,244,779.50 |
| Out-of-Pocket Costs and Expenses | $19,772.23 | $19,772.23 |
| Total | $2,741,760.23 | $2,713,103.73 |

(c) Sarah's counsel reported that they have received no restitution payments.

(d) Defense counsel objects to the Court's reliance on the information submitted by Sarah's attorney, likening it to a grossly inflated demand letter in a civil action. The Court overrules the objections for the same reasons stated above as to Vicky.

(e) The Marineland Series of images has so far had a limited exposure, at least in terms of federal criminal prosecutions. The government reports that there have been convictions in eight federal cases in which restitution orders have been entered for Sarah. The total restitution ordered for Sarah is $56,497.86; the average restitution per case is $7,062.23; and the median

restitution is $4,339.07. The government's chart indicates that no district court in the Middle District of Florida has ever ordered restitution in a Marineland Series case.

(f) It is reasonably predictable that the Marineland Series will continue to be available on the internet to those interested in child pornography. Predicting the number of future convictions and/or restitution orders for crimes contributing to Sarah's general loses is virtually impossible, particularly in light of the limited historical information provided.

(g) The government has presented no evidence from which the Court can reliably estimate the broader number of offenders involved in possession or distribution of the Marineland Series.

(h) There is no evidence that defendant reproduced any of the Marineland Series images. The government did not proffer any factual information about defendant's possession or distribution of any Sarah images. The most the Court can infer is that defendant possessed one Sarah image. The Sarah image was in defendant's shared files, and may well have been accessed by others, but there was no evidence presented by the government to support this hypothesis.

(i) Defendant had no connection to the initial production of the Marineland Series images.

(j) The Court infers that defendant possessed one image of Sarah. There is no evidence that defendant possessed or distributed additional images of Sarah.

(k) Sarah had no knowledge of defendant nor his single distribution of her image until informed by her attorney of the pending case.

(l) The Court concludes that the government has not established by a preponderance of the evidence that defendant's possession of the single image of Sarah was the proximate cause of her harm. No witnesses testified, and the record is far less substantial than that found insufficient in McGarity, 669 F.3d at 1269-70. Therefore, the government's request for restitution for Sarah is denied.

Accordingly, it is hereby

**ORDERED:**

The United States' request for restitution is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this 23rd day of January, 2015.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record
U.S. Probation